C. E. JACKSON, trading as C. E. Jackson Company, Complainant

v.

HARRISBURG DAILY MARKET, INC., Respondent.

Civ. A. No. 7042.

United States District Court
Middle District Pennsylvania.

Oct. 23, 1961.

Sharpe & Sharpe, Chambersburg, Pa., for complainant.

Reynolds and Lipsitt, Harrisburg, Pa., for respondent.

FOLLMER, District Judge.

This is an appeal by Harrisburg Daily Market, Inc., (hereinafter referred to as Market), from a Reparation Order by the Secretary of Agriculture made under the Perishable Agricultural Commodities Act, 7 U.S.C.A. § 499a et seq. (hereinafter referred to as P.A.C.A.). The appeal is brought under Section 499g(c) of the same Act from a finding in favor of complainant, C. E. Jackson Company (hereinafter referred to as Jackson). Since this is a trial de novo, the Court now makes the following,

Findings of Fact

1. Market is a Pennsylvania corporation, a licensed produce broker, with its principal place of business located in Harrisburg, Pennsylvania.

2. Jackson is an individual, Clifton E. Jackson doing business as C. E. Jackson Company, whose principal place of business is located in Chambersburg, Pennsylvania.

3. On or about September 15, 1958, in the course of interstate commerce, Jackson, by oral contract, sold to Market 432 crates of Elberta peaches at $1.10 per crate, f. o. b. the Cump Orchards in Franklin County, Pennsylvania, and 25¾ bushel baskets of U. S. No. 1, 2 inch size, Elberta peaches, at $1.85 per basket f. o. b. Hafer Cold Storage Plant, Chambersburg, Pennsylvania, for a total invoice price of $521.45.

4. The peaches sold by Jackson to Market, as aforesaid, were to be shipped to a customer of Market at Syracuse, New York, a fact which was made known to Jackson at the time of sale by Market's duly authorized agent, Isaac B. Snyder, who negotiated this sale for Market.

5. Jackson and Market's said agent went to the Cump orchard on the afternoon of the sale, and Mr. Snyder inspected the peaches on the trees and designated the portion of the orchard from which he wanted the peaches picked for shipment to Market's customer, without specifying that such peaches should be of any particular size, grade, quality or degree of firmness. Later the same day Market's said agent, Mr. Snyder, went to the cold storage plant in Chambersburg and inspected the packed peaches which he wanted to buy and found them to be satisfactory.

6. The following day, September 16, 1958, Market sent a truck and some empty crates to the Cump orchards in Franklin County, Pennsylvania, and the 432 crates of Elberta peaches sold to Market were loaded on this truck. These peaches were picked that day from that portion of the Cump orchards which Mr. Snyder had designated as the place from which they should be picked and were of the same size, grade, quality and degree of firmness as were the peaches seen by Mr. Snyder on the preceding day and approved by him on behalf of Market. There were also loaded on this truck the same day the 25¾ bushel baskets of Elberta peaches from the cold storage plant in Chambersburg, which were taken from the lot inspected by Mr. Snyder the previous day and approved by him as being U. S. No. 1, 2 inch peaches.

7. Market's customer at Syracuse, New York, Weaver Fruit & Vegetable Co., forwarded to Market under date of November 5, 1958, a statement showing that 132 crates of the peaches in question had been lost in repacking and a check to Market in the amount of $67.50 accompanied this statement. Market then forwarded a check to Jackson in the amount of $183.50 which represented the proceeds received by Market from Weav-

er Fruit & Vegetable Co., $367.50, less Market's cartage expense and telephone call charges amounting to $184. Jackson refused to accept this remittance and Market subsequently paid Jackson $38.55 without prejudice to the rights of either party. Accordingly, the difference between the contract price of $521.45 and the amount received by Jackson, $38.55, is $482.90.

8. There remains due and owing to Jackson from Market the sum of $482.90.

## Discussion

Market contends that the transaction did not involve a shipment in interstate commerce and that the agreement between the parties called for peaches which were graded U. S. No. 1, good, large, hard fruit.

■ I find no merit to either of these contentions. The evidence is very clear that both parties understood and agreed that the peaches were for shipment to Syracuse, New York, and that the destination specified in the contract was Syracuse, New York. I also conclude, on the basis of the evidence, that the agreement between the parties did not call for U. S. No. 1, good, large, hard fruit, as Market claims. Market's agent was shown the orchard at which the peaches were available, and he specifically designated the section of the orchard from which the peaches were to be picked. The evidence shows that the peaches were picked from the section so selected and were loaded on Market's truck. Market has completely failed to sustain the burden of proving that Jackson did not deliver peaches which conformed to the terms of the contract.

I am in complete accord with the findings and the Order of the Secretary of Agriculture.

## Conclusions of Law

■ 1. The Court has jurisdiction of the parties and the subject matter of the transaction. The peaches involved in the transaction were in interstate commerce within the purview of P.A.C.A.

2. The Secretary of Agriculture acted under the provisions of P.A.C.A., had jurisdiction to hear Jackson's complaint and to enter an appropriate reparation order.

■ 3. Jackson sold and Market purchased from Jackson on or about September 15, 1958, approximately 432 crates of Elberta peaches at $1.10 per crate f. o. b. Cump Orchards, Franklin County, Pennsylvania, and 25¾ bushel baskets of U. S. No. 1, 2 inch size Elberta peaches at $1.85 per basket f. o. b. Hafer Cold Storage Plant, Chambersburg, Pennsylvania, for a total invoice price of $521.45. The peaches were to be shipped to Market's customer, Weaver Fruit & Vegetable Co. at Syracuse, New York.

4. Market thereupon became indebted to Jackson in the sum of $521.45 against which it paid the sum of $38.55, leaving a balance due, owing and payable in the sum of $482.90, which has not been satisfied in whole or in part.

5. Market is indebted to Jackson in the sum of $482.90 with interest thereon at the rate of 5% per annum from October 1, 1958, to date.

6. Jackson is entitled to judgment in the amount set forth in the preceding Conclusion along with the costs of this action and a reasonable attorney's fee under 7 U.S.C.A. § 499g(c) in the sum of $75.

7. Judgment will be entered in Jackson's favor with costs.